IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Adrian Pintea and Marinela Pintea, ) | Case No.: |
| ) | |
| Plaintiff, ) | **JURY TRIAL DEMANDED** |
| ) | |
| v. ) | |
| ) | |
| Joseph Varan, Matthew E. Gurvey, Law Offices of ) | |
| Matthew E. Gurvey, P.C., ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT FOR VIOLATION OF THE FAIR HOUSING ACT 42 U.S.C. §3601 *et seq.*;
VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, 42 U. S. C. §§ 1981, 1982; BREACH
OF CONTRACT; AND BREACH OF FIDUCIARY DUTY**

Plaintiffs Adrian and Marinela Pintea are Romanian immigrants and victims of an equity-stripping scam perpetuated by defendants, who prey upon people who have immigrated from Eastern Europe or whose ancestors did the same. They lure people through a network relying upon language and cultural commonality to take advantage of people in foreclosure. They persuade people to pay high fees for illusory services to "save" their homes and then persuade the same people to execute quit-claim deeds to their homes to Defendant Joseph Varan or to companies he controls. On information and belief, Defendant Joseph Varan intends to work a fraud upon the courts by clouding title to homes in foreclosure, slowing the process of foreclosure while he and associates, including Defendants Matthew E. Gurvey and The Law Offices of Matthew E. Gurvey, P.C., bilk monthly payments from the homeowner victims while taking no competent legal steps to defend the foreclosure. Mr. and Mrs. Pintea lost their home, subject to foreclosure, to the Varan scam. They seek to quiet title, complete a loan modification or other workout, and save their home.

### INTRODUCTION

1. Defendant Matthew Gurvey (Defendant Gurvey) is an attorney admitted to practice law in the State of Illinois. Defendant Gurvey is the president of The Law Offices of Matthew E. Gurvey, P.C. (Defendant PC). Defendant Gurvey offered legal services through Defendant PC at all times relevant to this complaint. On information and belief, Defendant

Gurvey locates victims through referral from Defendant Joseph Varan, who accompanied Mr. and Mrs. Pintea to Defendant Gurvey's office and introduced them to him.

2. Defendant Joseph Varan is a person doing business in Chicago, Illinois.

3. Mr. and Mrs. Pintea hired Defendants to defend two of their homes from foreclosure. They fell behind on mortgage payments, received paperwork indicating their properties were subject to foreclosure, and were introduced to Mr. Varan by an acquaintance, a realtor fluent in Romanian who accompanied them to Mr. Varan's office.

## PARTIES, JURISDICTION AND VENUE

4. Mr. and Mrs. Pintea, the Plaintiffs, are a married couple and reside in the City of Chicago, County of Cook, State of Illinois.

5. Defendant Gurvey is licensed to practice law in the state of Illinois. Defendant PC is an Illinois corporation with Defendant Gurvey as its president.

6. Defendants maintain the following addresses:

a. Defendants Garvey and PC are listed with the IARDC with the address 33 North Dearborn, Suite 1140, Chicago, Illinois 60602-3102;

b. Defendant Varan is an individual who does business in the City of Chicago and also at 109 Symonds Drive, #382, Hinsdale, Illinois 60522. In 2015, Mr. and Mrs. Pintea consulted with Defendant Varan at his office in Chicago, Illinois, with regard to mortgage foreclosure proceedings related to their home and another property they own, both in Chicago, Illinois.

7. Subsequently, Defendant Varan accompanied Mr. and Mrs. Pintea to the office of Defendants Gurvey and PC in Chicago. They consulted with Defendants Gurvey and PC concerning mortgage foreclosure proceedings related to their home and another property they own, both in Chicago, Illinois

8. This matter involves Federal statutes, including the Fair Housing Act and Civil Rights Act. This is an action for violation of 42 U.S.C. §3601 *et seq*. (Fair Housing Act), and 42 U. S. C. §§ 1981, 1982 (Civil Rights Act of 1866). This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1331 (Federal question).

9. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391 because each Defendant is an individual or corporation subject to personal jurisdiction this district.

## SUBSTANTIVE ALLEGATIONS

10. Mr. and Mrs. Pintea were each born in Romania and immigrated to the United States; each of them is Romanian in national origin. Mr. and Mrs. Pintea speak Romanian as their first language.

11. At all relevant times, services offered to Mr. and Mrs. Pintea by defendants were related to their ownership of residential real estate.

12. Following a full discussion of the facts and circumstances regarding Mr. and Mrs. Pintea's defenses to foreclosure, Mr. and Mrs. Pintea were advised by Defendants Varan, Gurvey, and PC that they had good and complete defenses to the mortgage foreclosure actions on the merits.

13. Defendant Varan persuaded Mr. and Mrs. Pintea that he could save their home if they executed quit claim deeds in favor of companies he controlled. Believing him, Mr. and Mrs. Pintea executed at least one of the deeds.

14. After Mr. and Mrs. Pintea found out Defendant Varan and others were perpetuating a fraudulent scheme, they advised Defendant Varan they would not continue his services. He immediately responded he would "close" their files, but did not return any money or

execute quit-claim deeds to their home in their favor. At the time of this filing, non-defendant companies who are not parties to this matter have agreed to execute the deeds within a time certain.

15. After Mr. and Mrs. Pintea found out about the fraudulent scheme and contacted Defendant Varan, they did not notify Defendants Gurvey and PC. They expected their new attorney would transmit the concerns about their legal files in the process of seeking leave of court to file a competent answer to the foreclosure complaint. Nonetheless, Defendants Gurvey and PC filed a motion to withdraw and presented it before Mr. and Mrs. Pintea were notified. It was presumably granted, and Mr. and Mrs. Pintea certainly have no need of their "services."

16. As a result of the aforementioned, an attorney-client relationship was created between Mr. and Mrs. Pintea and Defendants Gurvey and PC. Defendants Gurvey and PC were to represent Mr. and Mrs. Pintea in the mortgage foreclosure actions against them.

17. As a result of the aforementioned, Defendants Gurvey and PC an owed Mr. and Mrs. Pintea the fiduciary duties including, but not limited to, care, loyalty, and disclosure.

18. As a result of the aforementioned attorney-client relationship, Defendants Gurvey and PC had a duty to represent Mr. and Mrs. Pintea with the reasonable care, skill, and diligence as ordinarily possessed and exercised by other attorneys in the community.

19. Defendants Gurvey and PC failed to advise Mr. and Mrs. Pintea of their rights in foreclosure, including the rights to redeem and reinstate. They failed to refer to Pinteas to a HUD-Certified Housing Counseling Agency for free assistance with obtaining a modification. They filed a form answer and affirmative defenses sounding largely in a silly defense of "show me the note" propagated by various scammers but largely ineffective in the First Appellate District of the State of Illinois since at least 2010. They propounded discovery promoting the

same theory. All of these actions were taken for purposes of delay, prolonging the foreclosure so Mr. and Mrs. Pintea would continue to pay monthly legal fees for a longer period of time. Had they not met another lawyer, they would have paid the fees, wrongly believed they were receiving a competent defense, and been in utter surprise when a Sheriff showed up to evict them at the end of the process. Most distressing is that Defendants Gurvey and PC failed to tell Mr. and Mrs. Pintea that Defendant Varan had stolen their property—that the quit-claim deed meant they no longer owned the property, and any "defense" was illusory and, at best, to the benefit of the new "owners."

20. At all relevant times, Defendants discriminatorily recruited victims on the basis of race and national origin, namely immigrants from eastern Europe, by recruiting them through community contacts—people who spoke languages like Romanian, had similar surnames, and who were also immigrants or descendants of immigrants.

21. At all relevant times, Defendants Varan, Gurvey, and PC charged a set monthly fee whether any service were rendered or what services were rendered and a late fee if payment was not made on time.

22. As a direct and proximate result of the Defendants actions and omissions, Mr. and Mrs. Pintea sustained and incurred monetary damages and loss as follows:

a. loss of equity in their home which could have been saved by following one or more of the alternatives to litigation set forth above and through unknowing execution of a quit-claim deed;

b. attorney fees and late fees paid for months in where no services were rendered;

c. service fees paid for months where no services were rendered by Defendant Varan; and

d. attorney fees paid in months where services were rendered but were incompetent.

5

23. The aforementioned monetary damages and loss would not have been sustained by the Mr. and Mrs. Pintea but for Defendants' fraud.

24. The damages sustained by Mr. and Mrs. Pintea were proximately caused by the Defendants' breach of duty as set forth in detail above without any negligence contributing thereto on the part of Mr. and Mrs. Pintea.

25. That solely by reason of the foregoing negligence of the Defendants, Plaintiffs, Mr. and Mrs. Pintea, have been damaged in an amount to be determined at trial, plus the costs and disbursements of this suit herein, and attorney fees.

## CAUSES OF ACTION

26. Mr. and Mrs. Pintea bring each of the following causes of action individually and in the alternative as required by applicable facts or law.

**CAUSE OF ACTION I – Violation of the Fair Housing Act and Fair Housing Amendments Act – 42 U.S.C. §3601 *et seq*.) by All Defendants**

27. Mr. and Mrs. Pintea incorporate each and every preceding paragraph stated above, inclusively, as though the same were fully set forth herein.

28. The Fair Housing Act, 42 U.S.C. §3601 *et seq*., was first enacted in 1968 to prohibit discrimination in connection with real estate transactions, including home purchases and refinancing. The Act has been broadly construed by the courts to make effective its provisions to protect consumers. The Act includes race as a basis for illegal discrimination.

29. Under 42 U.S.C. 3604(b), it is illegal to discriminate in services related to sales or rentals of dwellings. This is broadly construed to include services like mortgage loans and homeowners insurance. Under the same section, race is one of the protected classes. Under 42 U.S.C. 3604(c), it is illegal to:

> To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference,

6

limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

30. Further, 42 U.S.C. 3605 prohibits discrimination by persons or other entities whose business includes engaging in residential real estate-related transactions.

31. Defendants targeted Mr. and Mrs. Pintea Davis for inferior, substandard services because of their national origin, Romanian. They relied on her their national origin to induce trust and to prevent her from ascertaining the services were inferior, incompetent, and even non-existent by inducing trust based on apparent cultural commonalities, such as language.

32. In addition or in the alternative, Defendants engage in advertising in that is designed to target immigrants from eastern Europe. In particular, they soicit referrals from realtors and others of similar national origin. By the actions described above, Defendants have violated 42 U.S.C. §§3601, 3604, and 3605.

33. Mr. and Mrs. Pintea fell prey to Defendants because of their advertising targeting people who are immigrants.

34. Defendants' discriminatory actions, as set forth above, have caused Mr. and Mrs. Pintea to lose title to her residential home.

35. Targeting Mr. and Mrs. Pintea in mortgage lending, foreclosure defense, fraudulent mortgage foreclosure rescue schemes, and loan modification decisions based on their national origin violates the Fair Housing Act. As a proximate result of Defendants' systematic violation of this Act, Mr. and Mrs. Pintea are entitled to the relief requested herein.

WHEREFORE, Plaintiffs, Adrian and Marinela Pintea, demand judgment against the Defendants for:

a. Actual damages in a sum to be determined at trial ;
b. Return of all fees paid to Defendants for months wherein no services were rendered;
c. The costs of the underlying mortgage foreclosure action born by Plaintiffs;
d. The cost of the suit and attorneys fees incurred herein;

e.      Pain and suffering;
f.      Punitive damages; and
g.      For such other and further relief as this court may deem just and proper.

**CAUSE OF ACTION II: Violation of the Civil Rights Act of 866, 42 U. S. C. §§ 1981, 1982**

36.      Mr. and Mrs. Pintea restate and reallege the preceding paragraphs one through 28 and 33 through 36.

37.      42 U. S. C. § 1982 provides, in pertinent part:

"All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

38.      42 U. S. C. § 1981 provides, in pertinent part:

"(a) Statement of equal rights
"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

"(b) "Make and enforce contracts" defined
"For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

"(c) Protection against impairment
"The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."

39.      In 1866, "Romanian" was a separate and distinct race.

40.      As set forth more fully above, Defendants' actions denied Mr. and Mrs. Pintea of their rights to hold real property based solely on their race. Further, Defendants illegally offered Mr. and Mrs. Pintea a contract that was different in its performance, making, and conditions from contracts offered to white citizens based solely on their race.

WHEREFORE, Plaintiffs, Adrian and Marinela Pintea, demand judgment against all Defendants, jointly and severally, for:

a.     Actual damages in a sum to be determined at trial ;
b.     Return of all fees paid to Defendants for months wherein no services were rendered;
c.     The costs of the underlying mortgage foreclosure action born by Plaintiffs;
d.     The cost of the suit and attorneys fees incurred herein;
e.     Pain and suffering;
f.     Punitive damages; and
g.     For such other and further relief as this court may deem just and proper.

**CAUSE OF ACTION III: Attorney Malpractice as Against Defendants PC and Gurvey**

41.     Mr. and Mrs. Pintea restate and reallege the preceding paragraphs one through 29 and 31 through 36.

42.     Defendants breached their fiduciary duty as set forth more fully above.

43.     Mr. and Mrs. Pintea suffered actual damages in the form of loss of all equity in their homes, attorney fees expended for no meaningful representation, court costs incurred without meaningful participation in the case, mental anguish and medical costs, and expenditure of costs and fees for bringing this lawsuit.

44.     Mr. and Mrs. Pintea's damages were directly and proximately caused by one or more Defendants' breach.

WHEREFORE, Plaintiffs, Adrian and Marinela Pintea, demand judgment against the Defendants Gurvey and PC, jointly and severally, for:

a.     Actual damages in a sum to be determined at trial ;
b.     Return of all fees paid to Defendants for months wherein no services were rendered;
c.     The costs of the underlying mortgage foreclosure action born by Plaintiff;
d.     The cost of the suit and attorneys fees incurred herein;
e.     Pain and suffering; and
f.     For such other and further relief as this court may deem just and proper.

**CAUSE OF ACTION IV: Breach of Contact as Againts Defendants Gurvey, and PC**

45.     Defendants PC and Gurvey were hired by Mr. and Mrs. Pintea.

46.     Mr. and Mrs. Pintea paid money pursuant to Defendants PC and Gurvey.

47. Mr. and Mrs. Pintea paid Defendants Gurvey and PC the aforementioned fees for several months when they performed no work on Mr. and Mrs. Pintea's matters, for months were any service was incompetent, and for months when Defendants actively defrauded them out of title to their home.

WHEREFORE, Defendants Adrian and Marinela Pintea, demand judgment, jointly and severally, against the Defendants Gurvey and PC, jointly and severally, for:

1. Actual damages in a sum to be determined at trial;
2. Return of all fees paid to Defendant for months wherein no services were rendered;
3. The costs of the underlying mortgage foreclosure action born by Plaintiff;
4. The cost of the suit incurred herein; and
5. For such other and further relief as this court may deem just and proper

        Respectfully submitted,

        ADRIAN AND MARINELA PINTEA

            /s/Kelli Dudley

        By: _____
        Kelli Dudley, Attorney for Plaintiffs Adrian and Marinela Pintea

Kelli Dudley
Law Office of Kelli Dudley
1658 Milwaukee, #100-8377
Chicago, IL 60649
Ph: 312-771-9770
Email: attorneykelli@sbcglobal.net
#6279068